# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP600-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Theodore F. Mazza, Attorney at Law: |

Office of Lawyer Regulation,
      Complainant,
   v.
Theodore F. Mazza,
      Respondent.

DISCIPLINARY PROCEEDINGS AGAINST MAZZA

| | |
|---|---|
| OPINION FILED: | September 1, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per Curiam.

NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP600-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Theodore F. Mazza, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

     **v.**

**Theodore F. Mazza,**

      **Respondent.**

**FILED**

**SEP 1, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. Attorney Theodore F. Mazza has filed a petition for voluntary revocation of his license to practice law in Wisconsin pursuant to Supreme Court Rule (SCR) 22.19. Attorney Mazza is the respondent in a case in which the Office of Lawyer Regulation (OLR) has alleged 13 counts of misconduct arising out of two client matters. The OLR sought revocation of Attorney Mazza's law license and also sought restitution on behalf of the two clients. Attorney Mazza is also currently the subject of three additional pending OLR grievance matters that

have not yet been fully investigated by the OLR or brought before the Preliminary Review Committee. Attorney Mazza states in his petition that he cannot successfully defend against these multiple counts of misconduct. By order dated May 15, 2020, Referee Kim M. Peterson recommends that Attorney Mazza's license to practice law in Wisconsin be revoked and that he be ordered to make restitution to three clients.

¶2 Attorney Mazza was admitted to the practice of law in Wisconsin in 1965 and practices in Pewaukee. In 1978, his law license was indefinitely suspended, with leave to apply for reinstatement after one year, for misconduct consisting of misuse of client funds and neglect of legal matters. In re Disciplinary Proceedings Against Mazza, 82 Wis. 2d 598, 262 N.W.2d 767 (1978). In 1984, his law license was revoked based on his conviction of a criminal charge of conspiracy to commit theft as party to a crime. In re Disciplinary Proceedings Against Mazza, 117 Wis. 2d 770, 345 N.W.2d 492 (1984). This court reinstated Attorney Mazza's law license in 2002. In re Reinstatement of Mazza, 2002 WI 36, 252 Wis. 2d 86, 643 N.W.2d 83.

¶3 The OLR filed its complaint against Attorney Mazza on March 27, 2019. The first client matter detailed in the complaint involved Attorney Mazza's representation of J.D. in a case in which J.D. was convicted of operating while intoxicated, 5th offense. In September 2008, J.D. was sentenced to one year in prison. Attorney Mazza offered to manage J.D.'s affairs while he was incarcerated. This offer arose in the course of

2

and as a result of Attorney Mazza's lawyer-client relationship with J.D.

¶4 J.D. believed that Attorney Mazza would receive and pay all of J.D.'s bills, file J.D.'s 2007 and 2008 state and federal income tax returns, and arrange to terminate J.D.'s apartment lease and move his property into storage.

¶5 Notices from the Wisconsin Department of Revenue and Internal Revenue Service (IRS) regarding the tax returns were sent to Attorney Mazza's office, but Attorney Mazza failed to file, cause the returns to be filed, or discuss the tax returns with J.D. during his incarceration. Due to Attorney Mazza's failure to file the returns, J.D. incurred interest and penalties.

¶6 Attorney Mazza did not pay J.D.'s apartment rent for several months, and he failed to timely terminate J.D.'s lease. Attorney Mazza also failed to pay J.D.'s outstanding bill for electrical service for the apartment and failed to pay other ongoing obligations, causing J.D.'s accounts to become past due or go into collections. During J.D.'s incarceration, Attorney Mazza sold one of J.D.'s cars without J.D.'s authorization. Attorney Mazza has not accounted for the proceeds of the sale.

¶7 During J.D.'s incarceration, Attorney Mazza took possession of six silver dollars owned by J.D., valued at $300 and a three-gallon jar of change valued at between $400-$500. Those items were never returned to J.D., nor has Attorney Mazza accounted for the proceeds from those items.

¶8 During J.D.'s incarceration, Attorney Mazza withdrew funds from J.D.'s bank accounts for his own use or the use of others besides J.D. and transferred J.D.'s funds to Attorney Mazza's own business or personal accounts. Attorney Mazza failed to leave adequate balances in J.D.'s checking account, which resulted in overdraft fees.

¶9 Attorney Mazza failed to make monthly payments toward J.D.'s daughter's student loan, which caused the loan to go into default, accrue interest, and be forwarded to a collection agency.

¶10 In or about May 2009, Attorney Mazza represented J.D.'s daughter in a lawsuit relating to illegally downloaded music. J.D.'s daughter signed a settlement agreement requiring monthly payments of $108 until $2,600 was paid in full. Attorney Mazza did not timely communicate with J.D., his daughter, or her mother about the required monthly payments. Between the date of the settlement agreement and December 2009, Attorney Mazza made a single payment of $216 toward the required monthly payments. Attorney Mazza used J.D.'s funds to make that payment. J.D. paid $324 toward the debt in December 2009, by paying the same to Attorney Mazza so that he could forward it to the creditor's attorney. Attorney Mazza made another payment of $108 on February 26, 2010. By letter dated that same day, Attorney Mazza notified J.D.'s daughter's mother that she or J.D.'s daughter would have to make payments going forward.

¶11 J.D. was released from incarceration on August 27, 2009 and took possession of his checkbook from Attorney Mazza on

4

September 2, 2009. J.D. asked Attorney Mazza several times each month to stop being his financial power of attorney of record on his bank statements, but Attorney Mazza did not accompany J.D. to the bank to remove himself from the accounts until March, 2010.

¶12 On multiple occasions, Attorney Mazza transferred sums between his business account and J.D.'s savings account without J.D.'s authorization. Attorney Mazza failed to provide J.D. with a written or oral accounting of the funds and property managed and disbursed by him during J.D.'s incarceration. In total, Attorney Mazza failed to account for at least $19,001.97 of J.D.'s funds, which Attorney Mazza transferred from J.D.'s accounts to Attorney Mazza's own accounts or disbursed from J.D.'s accounts for purposes unrelated to J.D.'s interests.

¶13 After he was released from incarceration, J.D. asked Attorney Mazza about funds J.D. believed were missing from his accounts. Attorney Mazza falsely responded that the money was "tied up" because the IRS had frozen Attorney Mazza's accounts.

¶14 In 2016, J.D. filed a grievance with the OLR asserting that Attorney Mazza had converted and mismanaged J.D.'s assets and property and failed to pay numerous of J.D.'s debts, causing J.D. financial harm. Attorney Mazza misrepresented to the OLR that he had paid every legitimate outstanding bill of which he was aware, and he misrepresented that he only disbursed funds from J.D.'s accounts to pay J.D.'s expenses or to reimburse himself for his use of his own money to pay J.D.'s expenses.

5

¶15 The OLR's complaint alleged the following counts of misconduct with respect with to Attorney Mazza's handling of J.D.'s funds:

**Count 1:** By failing to diligently and promptly pursue his clients' interests in: (i) timely paying J.D.'s debts; (ii) timely terminating J.D.'s apartment lease; (iii) managing J.D.'s assets in accordance with J.D.'s wishes; (iv) timely filing J.D.'s 2007 and 2008 tax returns, and (v) having settled a civil action on J.D.'s daughter's behalf, timely communicating with J.D.'s daughter about the settlement terms and payments due or pursuing her interests in ensuring that payments due under her settlement agreement were timely made, in each instance, Attorney Mazza violated SCR 20:1.3.[1]

**Count 2:** By failing to hold J.D.'s funds and property in trust, separate from Attorney Mazza's own funds and property, Attorney Mazza violated former SCR 20:1.15(j)(1).[2]

---

[1] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] Effective July 1, 2016, substantial changes were made to Supreme Court rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016).

Former SCR 20:1.15(j)(1)provides:

A lawyer shall hold in trust, separate from the lawyer's own funds or property, those funds or that property of clients or 3rd parties that are in the lawyer's possession when acting in a fiduciary capacity that directly arises in the course of, or as a result of, a lawyer-client relationship or by appointment of a court.

6

**Count 3:** By converting to his own use funds and property entrusted to him by J.D., Attorney Mazza violated SCR 20:8.4(c).[3]

**Count 4:** By misrepresenting to J.D. that J.D.'s funds were "tied up" due to actions by the Internal Revenue Service, Attorney Mazza violated SCR 20:8.4(c).

**Count 5:** By making misrepresentations to the OLR, Attorney Mazza violated SCR 22.03(6),[4] enforceable via SCR 20:8.4(h).[5]

¶16 The other client matter detailed in the OLR's complaint arose out of Attorney Mazza's representation of P.L, who contacted Attorney Mazza to represent her in a dispute with her landlord. Before or within a reasonable time after commencing his representation of P.L., Attorney Mazza failed to enter into a written fee agreement with her or clearly communicate the basis or rate of his fees or expenses for which she would be responsible.

¶17 During the representation, Attorney Mazza failed to maintain contemporaneous or accurate records of his actions on

---

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[5] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

behalf of or time spent in representing P.L., failed to send her any billing statements, and failed to communicate to her fees being incurred in the representation.

¶18 During the representation, P.L., repeatedly asked Attorney Mazza and his non-lawyer assistant, Katie Boerschinger, for a billing statement or explanations of the fees accruing. Neither Boerschinger nor Attorney Mazza explained to P.L. the actual fees being accrued, nor did they provide her with a billing statement.

¶19 Between February 5 and March 7, 2016, P.L. made three payments of fees to Attorney Mazza totaling $300. In September 2016, P.L.'s landlord filed an action for damages against her. Attorney Mazza filed a counterclaim on P.L.'s behalf seeking damages of $1,900 and attorney's fees. During a December 8, 2016 hearing, the circuit court dismissed the landlord's claim and entered judgment in P.L.'s favor on the counterclaim in the amount of $1,900. That amount was offset with credits in the landlord's favor in the amount of $1,300. Attorney Mazza told the circuit court his fees were $1,000. The landlord was ordered to pay P.L. a total of $600 in net damages plus $1,000 in actual attorney's fees.

¶20 On or about January 13, 2017, Attorney Mazza received a check for $1,600 from P.L.'s landlord. Of that amount, $600 belonged to P.L. Attorney Mazza should have held in trust at least $600 pending notice to P.L., and either her agreement as to its disbursement or the resolution of any disputes as to how it should be disbursed. Attorney Mazza deposited the check into

8

his business account and within six days he used the funds for his own purposes.

¶21 In late January 2017, P.L. called Attorney Mazza's office to ask about the status of the judgment payment, at which time Boerschinger informed P.L. the judgment payment had been received. Boerschinger also told P.L. that her legal fees related to the dispute with the landlord totaled approximately $1,800 but that "they" had decided to keep the $1,600 received from the landlord and call P.L.'s account "even."

¶22 In a January 31, 2017 email, P.L. asked Boerschinger to email her a copy of her bill. Neither Attorney Mazza nor Boerschinger responded. Between February 7 and March 8, 2017, P.L. repeatedly asked for an accounting of Attorney Mazza's fees and the balance of her funds. Neither Attorney Mazza nor Boerschinger responded.

¶23 On March 15, 2017 Attorney Mazza met with P.L. to discuss filing bankruptcy. He quoted P.L. a flat fee of $1,900 for the bankruptcy representation, but offered to credit $600 of the judgment payment from her landlord against those fees. Between March 15 and April 19, 2017, Attorney Mazza and P.L. exchanged numerous emails in which P.L. repeatedly asked Attorney Mazza for an accounting of the fees incurred in her litigation and about the cost and timing of filing bankruptcy. Attorney Mazza promised to provide P.L. an accounting of the work he had performed regarding the litigation with her landlord, and he promised to meet certain deadlines with regard to her filing bankruptcy. However, he did not timely provide an

9

accounting of his fees and did not meet his deadlines with regard to the bankruptcy paperwork.

¶24 On April 20, 2017, a day after receiving an email from P.L. asking for an invoice, Attorney Mazza emailed P.L. a statement of his services that claimed fees of $2,750. He did not include the dates when services were purportedly provided. The April 20, 2017 statement misrepresented the amount of fees P.L. had incurred. P.L. requested that Attorney Mazza explain the costs he incurred in representing her. Attorney Mazza never provided P.L. with that information.

¶25 Attorney Mazza never filed a bankruptcy petition on P.L.'s behalf, nor did he provide any meaningful services to her related to a potential bankruptcy filing. Attorney Mazza never paid P.L. any of the $1,600 he received from her landlord. He misrepresented to the OLR that the $1,600 did not include attorney's fees and that the entire amount represented damages awarded to P.L. Attorney Mazza also misrepresented to the OLR that the funds he received from P.L.'s landlord were deposited into his business account by accident or inadvertently, despite the fact he promptly disbursed those funds from his business account for his own purposes or the purposes of his firm. He also misrepresented to the OLR that he had represented P.L. in four distinct matters, including a restraining order and a bankruptcy filing when in fact P.L. represented herself with regard to the restraining order and Attorney Mazza was not authorized to bill for any bankruptcy-related services.

¶26 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Mazza's representation of P.L.:

**Count 6:** By failing before or within a reasonable time after commencing his representation to clearly and accurately explain the basis or rate of his fees, including services for which P.L. would be billed and whether she would be billed for services provided by non-lawyer staff, Attorney Mazza violated SCR 20:1.5(b)(1).[6]

**Count 7:** By failing to timely respond to P.L.'s reasonable requests for information concerning the fees and expenses she could incur or had incurred, Attorney Mazza violated SCR 20:1.5(b)(3).[7]

**Count 8:** By failing to promptly notify P.L. of his office's receipt of the $1,600 payment from her landlord, Attorney Mazza violated SCR 20:1.15(d)(1).[8]

---

[6] SCR 20:1.5(b)(1) provides:

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

[7] SCR 20:1.5(b)(3) provides: "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

[8] Former SCR 20:1.15(d)(1) was renumbered as SCR 20:1.15(e)(1). The text of the rule was not changed and provides:

**Count 9:** By depositing the $1,600 check from P.L.'s landlord in his business account, and thereafter failing to hold the portion of the $1,600 in which P.L. had an interest in trust until he was authorized to disburse it, Attorney Mazza violated SCR 20:1.15(b)(1).[9]

**Count 10:** By using the entire $1,600 payment from P.L.'s landlord, a portion of which included P.L.'s $600 damages, for his own or his firm's purposes without P.L.'s authorization to do so, Attorney Mazza violated SCR 20:8.4(c).

**Count 11:** By failing, upon her requests, to timely provide P.L. with an accounting, Attorney Mazza violated SCR 20:1.15(d)(2).[10]

**Count 12:** By failing to provide P.L. with an accurate understanding of the timing and steps necessary to prepare and file her bankruptcy petition, so that she

---

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[9] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[10] SCR 20:1.15(d)(2) provides: "Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

12

could make informed decisions about the bankruptcy and about Attorney Mazza's representation, Attorney Mazza violated SCR 20:1.4(b).[11]

**Count 13:** By making misrepresentations to the OLR during the course of its investigation, Attorney Mazza violated SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶27 Attorney Mazza is also the subject of three additional grievance investigations. The first arises out of his representation of J.L. in a divorce action. The OLR is investigating allegations that Attorney Mazza failed to diligently advance his client's interests; failed to timely communicate with the client; failed to respond to the client's reasonable requests for information; borrowed money from the client without complying with the requirements of SCR 20:1.8(a); failed to provide the client with billing statements or an accounting despite repeated requests; failed to refund the unearned portion of fees paid by the client; and made misrepresentations to the OLR during the investigation of the grievance.

¶28 The OLR is also investigating a grievance filed by S.P., who hired Attorney Mazza to represent him a divorce case. In that matter the OLR is investigating allegations that Attorney Mazza failed to diligently advance the client's interests; refunded only $250 of the $3,500 in advanced fees paid by the client; failed to respond to the client's reasonable requests for information; failed to provide the client with an

---

[11] SCR 20:1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

accounting despite the client's request; attempted to cause the client to withdraw his grievance as a condition to refunding some portion of the unearned fees; failed to timely provide information and records to the OLR; and made misrepresentations to the OLR.

¶29 The final grievance being investigated by the OLR arose out of Attorney Mazza's service as treasurer for the Saint Vincent de Paul Conference – Saint Francis of Assisi Parish (Conference), a non-profit organization affiliated with Attorney Mazza's local Catholic parish, from approximately March 28, 2018 until October 31, 2018. In that matter, the OLR is investigating allegations that Attorney Mazza converted to his own use or the use of other clients or third parties at least $9,500 of the Conference's funds entrusted to him as treasurer; made misrepresentations to and provided the Conference with false reports and records in an effort to hide his conversion of funds; made misrepresentations to law enforcement; and commingled the Conference's funds in his IOLTA client trust account when the Conference was not a client and the Conference repeatedly instructed Attorney Mazza to open a separate account to hold their funds.

¶30 Attorney Mazza's petition for consensual revocation states that he is seeking consensual revocation freely, voluntarily, and knowingly. He states that he understands that he is giving up his right to contest the OLR's allegations. He agrees that he should be ordered to make restitution to three clients: $19,001.97 to J.D., $600 to P.L., and $3,250 to S.P.

14

The OLR supports Attorney Mazza's petition for consensual license revocation. Referee Peterson, similarly, recommends that Attorney Mazza's law license be revoked.

¶31 Having reviewed Attorney Mazza's petition, the OLR's complaint, the OLR's summary of the additional three grievances it is investigating, and the OLR's and the referee's recommendations, we accept Attorney Mazza's petition for the revocation of his license to practice law in Wisconsin. The seriousness of his misconduct demonstrates the need to revoke his law license to protect the public, the courts, and the legal system from the repetition of misconduct; to impress upon Attorney Mazza the seriousness of his misconduct; and to deter other attorneys from engaging in similar misconduct. In re Disciplinary Proceedings Against Carranza, 2014 WI 121, ¶49, 358 Wis. 2d 522, 855 N.W.2d 683.

¶32 We determine that Attorney Mazza should be required to pay restitution to the three clients mentioned in his petition. Finally, as is our usual custom, we deem it appropriate to require Attorney Mazza to pay the full costs of this proceeding, which are $2,642.34 as of June 12, 2020.

¶33 IT IS ORDERED that Theodore F. Mazza's petition for consensual license revocation is granted.

¶34 IT IS FURTHER ORDERED that the license of Theodore F. Mazza to practice law in Wisconsin is revoked effective October 6, 2020.

¶35 IT IS FURTHER ORDERED that within 60 days of the date of this order, Theodore F. Mazza shall pay to the Office of

15

Lawyer Regulation the costs of this proceeding, which are $2,642.34 as of June 12, 2020.

¶36 IT IS FURTHER ORDERED that within 60 days of the date of this order, Theodore F. Mazza shall pay restitution as follows:

- $19,001.97 to J.D.;

- $600 to P.L.; and

- $3,250 to S.P.

¶37 IT IS FURTHER ORDERED that restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶38 IT IS FURTHER ORDERED that Theodore F. Mazza shall comply with the provisions of SCR 22.26 concerning the duties of a person who is licensed to practice law in Wisconsin has been revoked.